IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**MARC JOSEPH STOUT,**

    **Plaintiff,**

v.      Civil Action No. 3:24cv679

**DEPUTY J.M. HIERWATER,**

    **Defendant.**

### MEMORANDUM OPINION

This matter comes before the court on Defendant Deputy J.M. Hierwater's Motion to Dismiss the Complaint (the "Motion").[1] (ECF No. 16.) Plaintiff Marc Joseph Stout responded in opposition to the Motion, (ECF No. 19), and Deputy Hierwater replied, (ECF No. 20).

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process.

For the reasons articulated below, the Court will grant the Motion. (ECF No. 16.)

### I. Factual and Procedural Background

#### A.  Factual Allegations[2]

On or about December 2, 2022, Mr. Stout "entered the [Stafford County] courthouse to conduct business with the clerk." (ECF No. 3, at 4.) "Upon passing through the security

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

[2] In considering the Motion to Dismiss, (ECF No. 16), the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Mr. Stout. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

screening area, Deputy Hierwater and several other deputies detained [Mr. Stout], claiming to [him] that [he] had an outstanding arrest warrant." (ECF No. 3, at 4.) Mr. Stout "explained to Deputy Hierwater and the other deputies that [he] did not have any outstanding warrants." (ECF No. 3, at 4.) Mr. Stout "complied with Deputy Hierwater's and the other deputies' commands to sit in the waiting area." (ECF No. 3, at 4.) "Deputy Hierwater radioed to dispatch to verify [Mr. Stout's] outstanding warrant," and "[d]ispatch responded" that Mr. Stout "did not have any outstanding arrest warrants." (ECF No. 3, at 4.) "Deputy Hierwater and the other deputies released [Mr. Stout] after detaining [him] for about five minutes." (ECF No. 3, at 4.)

Mr. Stout seeks relief for injuries sustained that caused "[m]ental and emotional anguish without physical injury or monetary loss." (ECF No. 3, at 5.) Mr. Stout also asks for $50,000 in compensatory damages, $50,000 in punitive damages, and the costs of litigation. (ECF No. 3, at 5.)

**B.    Procedural Background**

On September 25, 2024, Mr. Stout filed his Application to Proceed in District Court Without Prepaying Fees or Costs (the "Application") and his proffered Complaint. (ECF Nos. 1; 1-1 (sealed).) On September 27, 2024, the Court granted Mr. Stout's Application and ordered the Clerk to file the proffered Complaint, which the Clerk did on the same day. (ECF No. 2, at 1–2; ECF No. 3.) Mr. Stout's Complaint asserts one count against Deputy Hierwater in his personal capacity: violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983. (ECF No. 3, at 3.)

On November 19, 2024, Deputy Hierwater filed the instant Motion to Dismiss, arguing that dismissal is proper under Federal Rules of Civil Procedure 12(b)(6).[3] (ECF No. 16, at 1.) Mr. Stout responded, (ECF No. 19), and Deputy Hierwater replied, (ECF No. 20.) For the reasons articulated below, the Court will grant the Motion to Dismiss. (ECF No. 16.)

## II. Standard of Review: Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and

---

[3] Federal Rule of Civil Procedure 12(b)(6) states:

(b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

    \*    \*    \*

(6) failure to state a claim upon which relief can be granted[.]

Fed. R. Civ. P. 12(b)(6).

plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Giacomelli*, 588 F.3d at 193 (citation omitted). The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty, Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (concluding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011))).

Because Mr. Stout proceeds *pro se*, the Court liberally construes his filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citations omitted). Nonetheless, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. *See Iqbal*, 556 U.S. at 684 (outlining pleading requirements under Federal Rule of Civil Procedure 8 for "all civil actions").

### III. Analysis

Deputy Hierwater seeks dismissal of the Complaint on the grounds that he is entitled to qualified immunity, meaning that Mr. Stout fails to state a claim. For the reasons articulated below, the Court concludes that Mr. Stout fails to state a claim against Deputy Hierwater.

#### A. Mr. Stout Fails to State a Claim for Unlawful Seizure Under the Fourth Amendment Under 42 U.S.C. § 1983

Law enforcement officers sued under 42 U.S.C. § 1983[4] enjoy qualified immunity as long as they do not "breach 'clearly established statutory or constitutional rights of which a reasonable person would have known'" while "performing their duties." *Sigman v. Town of Chapel Hill*, 161 F.3d 782, 786 (4th Cir. 1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Even assuming, without deciding, that Deputy Hierwater seized Mr. Stout within the meaning of the Fourth Amendment, that seizure was reasonable. Deputy Hierwater did not breach Mr. Stout's Fourth Amendment rights. As a result, Deputy Hierwater is entitled to qualified immunity. The Court will grant his Motion to Dismiss.

---

[4] 42 U.S.C. § 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

5

1. **<u>Legal Standard: Qualified Immunity</u>**

Law enforcement officers sued under § 1983 are protected by qualified immunity "when performing their duties within the scope of their employment insofar as their conduct does not breach 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sigman*, 161 F.3d at 786 (quoting *Harlow*, 457 U.S. at 818). Qualified immunity is "not merely a defense to liability" but is "an immunity from suit" and courts must therefore "scrutinize and dismiss appropriate cases on qualified immunity grounds early in the litigation." *Id.*; *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." (collecting cases).)

"The goal of the doctrine is to balance two important concerns, first the need to hold public officials accountable when they exercise power irresponsibly and second the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Melgar ex rel. Melgar v. Greene*, 593 F.3d 348, 357 (4th Cir. 2010) (internal quotation marks and citations omitted). "The purpose of the immunity is to allow some room for discretionary judgment in what are indisputably difficult circumstances and not to have the prospect of being blind-sided in hindsight discourage officers from the constructive tasks they can in fact perform." *Id.* (citing *Gooden v. Howard County*, 954 F.2d 960, 967 (4th Cir. 1992) (en banc)). "Thus officers will not be held liable, even if they violate statutory or constitutional rights, unless they had prior guidance which would allow them to determine that their contemplated action was improper." *Id.*

Determining whether a defendant is entitled to qualified immunity involves a two-part inquiry, as the Court must determine: (1) whether the facts "make out a violation of a

constitutional right"; and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal quotations omitted). For a right to be "clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right.'" *M.C. ex rel. Crawford v. Amrhein*, 598 F.App'x 143, 147 (4th Cir. 2015) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).)

Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. A defendant "is entitled to qualified immunity if either prong is not satisfied." *Attkisson v. Holder*, 925 F.3d 606, 623 (4th Cir. 2019), *as amended* (June 10, 2019) (citing *Pearson*, 555 U.S. 223 at 244–45)).

### 2. Legal Standard: Seizure by Show of Authority and Investigatory Stops

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. The Fourth Amendment's protections, however, "do[] not extend to all police-citizen encounters." *United States v. Stover*, 808 F.3d 991, 995 (4th Cir. 2015) (quoting *United States v. Jones*, 678 F.3d 293, 298–99 (4th Cir. 2012)). "[O]nly when [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). When physical force is absent, "a seizure requires both a 'show of authority' from law enforcement officers and 'submission to the assertion of authority' by the defendant." *Id.* (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991) (emphasis omitted)).

To determine whether law enforcement officers have displayed a show of authority sufficient to implicate the Fourth Amendment, a court applies the objective test outlined in *Mendenhall*, 446 U.S. 544. *Id.* "The police have done so 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [they were] not free to leave.'" *Id.* (quoting *Mendenhall*, 446 U.S. at 554). Cases in the United States Court of Appeals for the Fourth Circuit "have enumerated six broad, non-exclusive categories of facts that may be relevant" to a court's analysis of the circumstances surrounding the incident: (1) how many officers were present; (2) whether officers were in uniform and/or displayed firearms; (3) whether any officer touched the defendant or made any attempt to block or restrain his movement; (4) whether the officer's questioning was conversational rather than intimidating; (5) whether the officer informed the defendant that the officer suspected [the defendant] of illegal activity, or treated the encounter as routine; and, (6) whether the officer asked for identification and how quickly the officer returned it to the defendant. *United States v. Cloud*, 994 F.3d 233, 242–43 (4th Cir. 2021) (citing cases).

For a seizure to occur, "the defendant must actually submit to [the law enforcement officer's] show of authority." *Cloud*, 994 F.3d 233 at 242 (citing *Stover*, 808 F.3d at 995). "That submission need not be explicit; it can take the form of 'passive acquiescence.'" *Id.* When determining whether a defendant has submitted to a show of authority through "passive acquiescence, the relevant test . . . is that enunciated in *Mendenhall*." *Stover*, 808 F.3d at 995–96 (quoting *Brendlin v. California*, 551 U.S. 249, 255 (2007) (internal quotation marks omitted)). "[W]hat may amount to submission depends on what a person was doing before the show of authority: a fleeing [person] is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away." *Brendlin*, 551 U.S. at 262 (finding

that the passenger of a stopped car "had no effective way to signal submission while the car was still moving on the roadway, but once it came to a stop he could, and apparently did, submit by staying inside").

The Fourth Amendment's "protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry*, 392 U.S. at 9). These protections allow an officer to lawfully stop and briefly detain a person for investigative purposes (a "*Terry* stop") when the officer has a "reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Terry*, 392 U.S. at 30.

"Reasonable suspicion" is a "less demanding standard than probable cause and requires a showing considerably less than a preponderance of the evidence." *Wardlow*, 528 U.S. at 123. To satisfy the standard, an officer need only "point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion." *Terry*, 392 U.S. at 21. The suspicion must also be objectively reasonable based on those facts. *United States v. Cortez*, 449 U.S. 411, 417–18 (1981).

To determine whether an officer had such a specific, articulable, and objective basis to "'suspect[] legal wrongdoing,' 'reviewing courts . . . must look at the totality of the circumstances of each case'" based on the facts known to the officer at the time of the seizure. *United States v. Kehoe*, 893 F.3d 232, 237 (4th Cir. 2018) (quoting *Arvizu*, 534 U.S. at 273). The facts available at the time of the seizure "must be seen and weighed . . . as understood by those versed in the field of law enforcement." *Cortez*, 449 U.S. at 418 (finding that objective facts that would be meaningless to the untrained, afford a legitimate basis for suspicion when used by trained law enforcement officers); *see also Arivzu*, 534 U.S. at 273 (stating that officers

can "draw on their own experience and specialized training to make inferences from and deductions about cumulative information available to them that 'might well elude an untrained person'").

Reasonable articulable suspicion "does not deal with hard certainties, but with probabilities," so "an officer's articulated facts must in their totality serve to eliminate a substantial portion of innocent travelers before reasonable suspicion will exist." *United States v. McCoy*, 513 F.3d 405, 413 (4th Cir.), *cert. denied*, 553 U.S. 1061 (2008) (each of an officer's articulated facts *on its own* is not required to eliminate every innocent traveler and establish reasonable suspicion). Courts apply "commonsense and [a] contextual approach in evaluating the validity of an investigatory detention." *United States v. McBride,* 676 F.3d 385, 392 (4th Cir. 2012).

While an officer's "mere hunch," *Arivzu*, 534 U.S. at 274, or reliance on an uncorroborated anonymous tip, *United States v. Brown*, 401 F.3d 588, 595–96 (4th Cir. 2005), insufficiently supports "reasonable suspicion," the standard is not a particularly onerous one. *See, e.g., McCoy*, 513 F.3d at 412–13 (experienced officer's observation of vehicles moving between parking lots where drug sales had previously occurred and without occupants entering the stores sufficient to constitute reasonable articulable suspicion).

### 3. Mr. Stout Does Not Plausibly Allege a Violation of the Fourth Amendment

Mr. Stout argues that his seizure was based on an inchoate "hunch" and mere speculation. (ECF No. 19, at 2.) Binding law requires this Court to find otherwise. *McCoy*, 513 F.3d at 410–11.

Even assuming without deciding that Deputy Hierwater seized Mr. Stout for constitutional purposes when he detained him "for about five minutes" when Mr. Stout entered

the Stafford County Courthouse to verify whether Mr. Stout had an outstanding warrant, (ECF No. 3, at 3), the investigatory stop of Mr. Stout was supported by reasonable articulable suspicion. A misdemeanor arrest warrant charging Mr. Stout with assault had been issued on November 21, 2022, by the Stafford County General District Court 11 days before the encounter between Mr. Stout and Deputy Hierwater at Stafford County Courthouse on December 2, 2022.[5] (*See* ECF No. 17-1, at 2; ECF No. 3, at 4.) Notably, the warrant was issued "based on the sworn statements of Deputy Sheriff Hierwater, JM", the same deputy who asked Mr. Stout to go to the waiting area and whom Mr. Stout sues here. (ECF No. 17-1, at 2.) This plainly supports a finding of reasonable articulable suspicion. *McCoy*, 513 F.3d at 414 ("the reasonable suspicion determination demands that facts—whether seemingly innocent or obviously incriminating—be assessed in light of their effect on the respective officer's perception of the situation at hand"). Mr. Stout's detention constitutes a brief investigative stop because, given that he had sworn out a warrant against Mr. Stout 11 days before, Deputy Hierwater had a reasonable, articulable, and objective basis to "'suspect[] legal wrongdoing,'" based on the facts known to him at the time of the stop. *See Kehoe*, 893 F.3d at 237 (quoting *Arvizu*, 534 U.S. at 273); *see also United States v.*

---

[5] In evaluating Mr. Stout's claim, the Court considers the certified copy of the arrest warrant attached as Exhibit 1 to Deputy Hierwater's Motion to Dismiss. (*See* ECF No. 17-1, at 1–3); *Brown Goldstein Levy LLP v. Fed. Ins. Co.*, 68 F.4th 169, 174 (4th Cir. 2023) ("[W]e have held that when a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity.") (internal quotation marks and citation omitted); *see also Carter v. Baltimore Cnty.*, 39 F.App'x 930, 933 (4th Cir. 2002) ("'Although this case comes to us on a motion to dismiss under Federal Rule of Civil Procedure 12(b), we are not precluded in our review of the complaint from taking notice of items in the public record'") (quoting *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986)).

The arrest warrant is a matter of public record and Mr. Stout does not challenge its authenticity. Indeed, while adding that he was acquitted of the charge, Mr. Stout "concedes that there was at one point an assault warrant for [his] arrest" and that he "does not object to [Deputy] Hierwater's submission of the warrant to this court." (ECF No. 19, at 1.)

*Hensley*, 469 U.S. 221, 223 (1985) (holding that "police officers may stop and briefly detain a person who is the subject of a 'wanted flyer' while they attempt to find out whether an arrest warrant has been issued.").

Further, the length of time that Mr. Stout was detained was also reasonable. Mr. Stout was released when Deputy Hierwater confirmed that no warrant was on file. (ECF No. 3, at 4.) Mr. Stout was only detained "for about five minutes." (ECF No. 3, at 4.) When considering the reasonableness of a detention's length, a court must "consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." *United States v. Sharpe*, 470 U.S. 675, 685 (1985) (citations omitted). Here, "about five minutes" was a reasonable amount of time for Deputy Hierwater to discover whether Mr. Stout had an outstanding warrant for his arrest. Nor does Mr. Stout allege that Deputy Hierwater failed to "diligently pursue [his] investigation." *United States v. Place*, 462 U.S. 696, 709 (1983). Rather, Mr. Stout alleges facts that, even read favorably, could support a reasonable inference that Deputy Hierwater *did* diligently pursue the investigation. (ECF No. 3, at 4 (stating that after Deputy Hierwater told him to "sit in the waiting area," Deputy Hierwater "radioed to dispatch to verify [Mr. Stout's] outstanding warrant"); *cf. United States v. Hill*, 852 F.3d 377, 382–83 (4th Cir. 2017) (holding that a twenty-minute traffic stop "in which there [were] brief periods unaccounted for" was reasonable because "the stop was not prolonged for purposes beyond the mission of the stop, and the officers executed their tasks with reasonable diligence.").

### B. Because Mr. Stout Fails to Allege a Violation of a Constitutional Right, Deputy Hierwater is Entitled to Qualified Immunity

To determine whether a defendant is entitled to qualified immunity, a court must determine: (1) whether the facts "make out a violation of a constitutional right"; and (2)

"whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (internal quotations omitted).

Because Deputy Hierwater's brief detention of Mr. Stout to verify whether he had an outstanding warrant does not rise to an unreasonable seizure under the Fourth Amendment, Mr. Stout fails to allege facts that "make out a violation of a constitutional right."[6] *Id.* Thus, Deputy Hierwater is entitled to qualified immunity, and the Court will dismiss Mr. Stout's Complaint.

## IV. Conclusion

For the foregoing reasons, the Court will GRANT Deputy Hierwater's Motion to Dismiss. (ECF No. 16.)

An appropriate Order shall issue.

Date: 4/22/25
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

---

[6] Because Mr. Stout fails to allege facts showing a constitutional violation, the Court need not reach the second prong of the qualified immunity analysis—"whether the right at issue was clearly established." *Pearson*, 555 U.S. at 232 (internal quotation marks omitted).

13